IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| GARY WAITERS, # 273876, | ) Civil Action No. 3:09-2686-CMC-JRM |
| Plaintiff, | ) |
| vs. | ) |
| DR. CROSS; <br> MR. BENJAMIN; <br> MRS. SPIKE; <br> MR. MARSHALL; AND <br> MR. QUMBLEY, OFFICIAL AND INDIVIDUAL <br> CAPACITIES, | ) **REPORT AND RECOMMENDATION** |
| Defendants | ) |

Plaintiff filed this action on October 19, 2009.[1] At the time of the alleged actions, he was a pretrial detainee at the Jasper County Detention Center ("JCDC"). He is currently an inmate at the Kershaw Correctional Institution of the South Carolina Department of Corrections. JCDC employees Benjamin, Marshall, and Qumbley (the JCDC Defendants") filed a motion for summary judgment on May 28, 2010. Because Plaintiff is proceeding pro se, he was advised on June 1, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the JCDC Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. On July 15, 2010, Plaintiff filed a notice of voluntary dismissal as to all Defendants.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

**MOTION TO DISMISS**

On July 13, 2010, Plaintiff filed what appears to be a motion to voluntarily dismiss Defendants without prejudice. The Federal Rules of Civil Procedure provide that a plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A). Defendants Dr. Cross and Mrs. Spike have not filed an answer or a motion for summary judgment in this action. Thus, it is recommended that Plaintiff's motion to voluntarily dismiss Defendants Cross and Spike without prejudice be granted.

Plaintiff's motion, however, was filed after the JCDC Defendants filed an answer and a motion for summary judgment. Thus, Plaintiff fails to meet the requirements to dismiss the JCDC Defendants without a court order. See Fed. R. Civ. P. 41(a)(1). Under Rule 41(a)(2), a district court may dismiss an action "at the plaintiff's request only by court order, on terms that the court considers proper." Rule 41(a)(2), Fed. R. Civ. P. "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). "In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant." Id. "A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986).

It is well established that prejudice to the defendant does not result from the prospect of a second lawsuit. See Vosburgh v. Indemnity Ins. Co. of North America, 217 F.R.D. 384, 386

(S.D.W.Va. Sep. 12, 2003). The Fourth Circuit, however, has found on multiple occasions that a district court does not abuse its discretion in denying a motion for voluntary dismissal if the case has advanced to the summary judgment stage and the parties have incurred substantial costs in discovery. See, e.g., Miller v. Terramite Corp., 114 Fed. Appx. 536, 540 (4th Cir. 2004)(affirming district court's decision that plaintiff's motion for voluntary dismissal was "untimely and would waste judicial resources" because the motion was filed well after discovery had closed and a dispositive order was imminent); Francis v. Ingles, 1 Fed. Appx. 152, 154 (4th Cir. 2001)(affirming district court's denial of motion to dismiss without prejudice because the "plaintiff's motion came after a lengthy discovery period and merely one week before the scheduled trial date" and "the motivation for the motion appeared to be to circumvent" a discovery ruling, which counsel could have avoided "by deposing the witness within the discovery period"); Skinner v. First Am. Bank of Va., 64 F.3d 659, 1995 WL 507264, at *2-3 (4th Cir. 1995) (stating that "[t]he expenses of discovery and preparation of a motion for summary judgment may constitute prejudice sufficient to support denial of a voluntary dismissal" and noting that granting a motion to dismiss is not required to allow a party to "avoid an adverse ruling in federal court"); Sullivan v. Westinghouse Elec. Corp., 848 F.2d 186, 1988 WL 54059, at *2 (4th Cir.1988) ("Given the advanced stage of the proceedings, the district court's denial of [the plaintiff's] motion was not an abuse of discretion."). Four factors that the court can consider in deciding a motion to voluntarily dismiss an action are: "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending." Gross v. Spies, 133 F.3d 914, 1998 WL 8006, at *5 (4th Cir. Jan.13, 1998)[Table].

Here, the JCDC Defendants filed a motion for summary judgment which includes an affidavit from Defendant Benjamin as well as Plaintiff's medical records. Plaintiff excessively delayed filing his motion to voluntarily dismiss the JCDC Defendants. His motion was filed after the JCDC Defendants filed an answer and a motion for summary judgment, and was filed after the deadline (July 6, 2010) for Plaintiff to file any opposition to the JCDC Defendants' motion for summary judgment. Additionally, Plaintiff has provided no explanation for the need for a dismissal. Thus, it is recommended that Plaintiff's motion to voluntarily dismiss the JCDC Defendants without prejudice be denied.

## **MOTION FOR SUMMARY JUDGMENT**

Plaintiff requests monetary damages for pain and suffering, and emotional distress because Defendants failed to provide him with a certain type of medical care for his injured finger. Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to show that they were deliberately indifferent to Plaintiff's serious medical needs; and (2) they are entitled to qualified immunity.

1. Medical Claims

Plaintiff injured his finger while playing basketball with other detainees on April 5, 2009. He claims that Ms. Spike denied his request to go to the hospital, he did not receive strong enough pain medicine, and he did not receive an x-ray for over 72 hours. Plaintiff alleges that Dr. Cross did not do his job well. Additionally, Plaintiff claims that Defendants Marshall and Benjamin would not let him go to the hospital, but told him they would let him call his family so he could get money to go to the hospital. He appears to allege that he asked Defendant Qumbley to get in touch with his mother. The JCDC Defendants argue that Plaintiff fails to establish a constitutional claim

4

against them because he received medical care, Plaintiff's disagreement as to the care he received does not constitute cruel and unusual punishment, they had nothing to do with the quality or quantity of the medical care Plaintiff received, and they were entitled to rely on the expertise of medical professionals.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).[2] The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

---

[2] Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)(citing Estelle v. Gamble, 429 U.S. 97 (1976)).

5

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that the JCDC Defendants were deliberately indifferent to any of his serious medical needs. Defendant Benjamin states that medical services are provided to detainees by Southern Health Partners which provides sixteen hours of daily coverage. The JCDC Defendants have provided copies of Plaintiff's medical records from the time of his JCDC detention. These records reveal that Nurse Marilyn Spikes examined Plaintiff's finger after the incident, treated him with ice packs, gave him Motrin for pain and splinted his finger. When she checked on Plaintiff later that afternoon, he was laughing, joking, and walking around his housing unit. On April 6, 2009, Plaintiff's finger was rechecked and a splint reapplied. On April 7, 2009, Dr. Charles Bush made rounds at the JCDC and ordered an x-ray of Plaintiff. The x-ray revealed a dislocation of Plaintiff's finger, but no fracture. On April 21, 2009, Dr. Cross examined Plaintiff and ordered that his (Plaintiff's) right finger be "buddy taped" to his ring finger for two weeks. On April 25, 2009, Plaintiff demanded a second medical opinion. Nurse Spikes met with Plaintiff and explained the JCDC policy for obtaining second opinions. Plaintiff received follow-up care from nurses at JCDC on numerous occasions in April and May 2009. See Benjamin Aff. and Attachments.

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson,

7

868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that the JCDC Defendants' actions or inactions rose to the level of a constitutional violation.

    2.    Qualified Immunity

The JCDC Defendants contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that the JCDC Defendants violated any of his

8

clearly established constitutional or statutory rights. Therefore, the JCDC Defendants are entitled to qualified immunity in their individual capacities.

## **CONCLUSION**

Based on review of the record, it is recommended that Plaintiff's motion for voluntary dismissal without prejudice (Doc. 13) be **granted, in part**, as to Defendants Dr. Cross and Mrs. Spike, and **denied, in part**, as to Defendants Benjamin, Marshall, and Qumbley. It is also recommended that the motion for summary judgment (Doc. 11) of Defendants Benjamin, Marshall, and Qumbley be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

October 18, 2010
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).